**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Anonymous**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Anonymous,**<br><br>**Defendants.** | **Case No. __________________**<br><br>**Complaint for Violations of the False Claims Act, 31 U.S.C. §§ 3729, *et seq.***<br><br>**Filed Under Seal**<br><br>**Jury Trial Demanded** |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **United States of America,** ***ex rel.***<br>**Christopher Carzoli**<br>Vinohradska 159A<br>100 00 Prague 10<br>Czech Republic<br><br>and<br><br>**Manfred Hanspeter**<br>V pěšinách 177<br>25164 Mnichovice<br>Czech Republic<br><br>**Plaintiff,**<br><br>**v.**<br><br>**L88 Investments,**<br>4100 MacArthur Blvd, Suite 310<br>Newport Beach, CA 92660<br><br>**John Todoroki,**<br>4100 MacArthur Blvd, Suite 310<br>Newport Beach, CA 92660<br><br>**Robert Cristiano,**<br>2424 N Edgewood Street<br>Arlington, VA 22207<br><br>**John Giambalvo,**<br>1201 Connecticut Avenue NW<br>Washington, District Of Columbia 20036<br><br>and<br><br>**Nenad Pejic**<br>Vinohradska 159A<br>100 00 Prague 10<br>Czech Republic<br><br>**Defendants.** | **Case No. ________________**<br><br>**Complaint for Violations of the False Claims Act, 31 U.S.C. §§ 3729,** ***et seq.***<br><br>**FILED UNDER SEAL**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1) *Qui tam* relators Christopher Carzoli and Manfred Hanspeter, by and through their attorneys, on behalf of the United States of America, files this complaint against L88 Investments (L88), John Todoroki, Robert Cristiano, John Giambalvo, and Nenad Pejic to recover damages, penalties, and attorneys' fees for violations of federal False Claims Act, 31 U.S.C. §§ 3729 *et seq.* committed by the Defendants.

2) In or about June 2012, L88 purchased the building where Radio Free Europe/Radio Liberty (RFE/RL) operates, effectively making L88 Radio Free Europe/Radio Liberty's landlord and property manager.

3) In its capacity as landlord and property manager for RFE/RL, and pursuant to its contract with RFE/RL, L88 has collected payments from RFE/RL earmarked for various property management vendors and services.

4) L88 has not actually paid the vendors or provided the property management services to RFE/RL.

5) Defendants are engaged in fraud against the United States Government by:

a) Taking funds from a U.S. Government grantee intended for furtherance of a government purpose and failing to provide the contracted services in exchange;

b) Collecting payments from a U.S. Government grantee intended for pass-through to property management service vendors, but not actually paying any of the vendors;

c) Approving invoices from L88 to RFE/RL knowing that the funds had not been used on the invoiced services;

d) Conspiring to send moneys to L88 knowing that L88 would not spend those moneys on the contractually mandated services and vendors;

e) Reorganizing RFE/RL to eliminate technology division oversight of moneys going to L88; and

f) Conspiring to staff RFE/RL management positions with employees willing to either ignore or participate in the fraud.

6) By submitting false claims for payment to a grantee of the U.S. Government, Defendants have violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(A).

7) By conspiring to submit false claims for payment to a grantee of the U.S. Government, Defendants have violated the False Claims Act, 31 U.S.C. § 3729(a)(1)(C).

**JURISDICTION AND VENUE**

8) This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a).

9) This Court has personal jurisdiction over Defendant L88 pursuant to 31 U.S.C. § 3732(a) because L88 maintains an office and transacts business in this judicial district.

10) This Court has personal jurisdiction over Defendant Robert Cristiano pursuant to 31 U.S.C. § 3732(a) because Cristiano can be found and transacts business in this judicial district.

11) This Court has personal jurisdiction over Defendant John Todoroki pursuant to 31 U.S.C. § 3732(a) because Todoroki can be found and transacts business in this judicial district.

12) This Court has personal jurisdiction over Defendant Nenad Pejic pursuant to 31 U.S.C. § 3732(a) because Pejic can be found and transacts business in this judicial district.

13) This Court has personal jurisdiction over Defendant John Giambalvo pursuant to 31 U.S.C. § 3732(a) because Giambalvo can be found and transacts business in this judicial district.

14) Venue is proper in this Court under 28 U.S.C. §1391(c) and 1395(a), and 31 U.S.C. § 3732(a) because the principal defendant, L88, maintains an office in this judicial district, the relevant contract was executed in this judicial district, most witnesses reside or can be found in this judicial district, the government funds at issue originated from an agency headquartered in this district, and a substantial portion of the activities that form the basis of the complaint were planned and directed in this judicial district.

## PARTIES

***Relator Christopher Carzoli***

15) Relator Christopher Carzoli is a citizen of the United States and currently resides in Prague, Czech Republic.

16) Carzoli, is the "original source" of this information within the meaning of 31 U.S.C. § 3730(e)(4)(B), and states that his knowledge of the information contained herein has not been publicly disclosed.

17) Carzoli brings this civil action for violations of 31 U.S.C. § 3729 (a)(1)(A) and (C) for himself and for the United States Government pursuant to 31 U.S.C. § 3730(b)(1).

18) Carzoli began working for RFE/RL as a transmitter operator in 1992.

19) Carzoli received numerous promotions over the past twenty years and is now the Director of Project Management at RFE/RL.

***Relator Manfred Hanspeter***

20) Relator Manfred Hanspeter is a citizen of the United States and currently resides in Prague, Czech Republic.

21) Hanspeter, is the "original source" of this information within the meaning of 31 U.S.C. § 3730(e)(4)(B), and states that his knowledge of the information contained herein has not been publicly disclosed.

22) Hanspeter brings this civil action for violations of 31 U.S.C. § 3729 (a)(1)(A) and (C) for himself and for the United States Government pursuant to 31 U.S.C. § 3730(b)(1).

23) Manfred Hanspeter is Director of Telecommunications.

24) Hanspeter has been employed with RFE/RL since 1988.

***Defendant L88 Investments***

25) L88 is a consortium of wealthy U.S. investors and other organizations, including, DLA Piper, William Blair & Company, BGR Group, Transwestern, Ware Malcomb, Gleeds, Marsh, FNF Title International, Citibank, Wells Fargo Northwest N.A., Ehrhardt Keefe Steiner & Hottman PC, Delta Associates, DRI Development Services, LLC.

26) L88's Government Strategic Operational Assets Investment Program purchases assets used by U.S. Government agencies overseas in order to profit from the U.S. Government's use of those assets.

27) This program is comprised of two separate initiatives: the L88 Strategic Operational Assets Platform (SOAP) and the L88 Overseas Building Platform (OBP).

28) The organization touts ties to former congressmen and diplomats in the United States, though it does not disclose them by name.

29) In addition to its business efforts overseas, L88 also engages in extensive lobbying on issues related to overseas U.S. media operations.

30) For its Prague property, L88 uses its own internal property management company – Central Eastern Europe Management Company, Inc. (CEEMaC) – to oversee the management of assets.

31) Prior to forming CEEMaC, L88 used third party property management companies to manage its properties.

***Defendant Robert Cristiano***

32) Robert Cristiano currently resides in Arlington, Virginia and acts as a real estate developer in Washington, DC.

33) He was a Principal at L88, LLC prior to his resignation on January 3, 2016.

34) Cristiano is a self-proclaimed "personal friend" of U.S. Representative Ed Royce, Chairman of the House Foreign Affairs Committee.

35) Despite Cristiano's claims, Rep. Royce has denied having any friendship with Cristiano.

36) Cristiano has conducted fundraisers for Rep. Royce.

37) Cristiano acts as Director of the Prague Freedom Foundation.

38) The Prague Freedom Foundation is an independent foundation, which claims to provide financial support to individuals, public and private universities and organizations that promote freedom of the press and encourage independent journalism.

39) The Prague Freedom Foundation's office is located in the RFE/RL headquarters in Prague, Czech Republic.

***Defendant John Todoroki***

40) John Todoroki is a principal at L88 investments.

41) Todoroki claims to be Founder of the Prague Freedom Foundation.

42) Todoroki was often in Prague, and acted as the primary link between L88 and RFE/RL.

***Defendant John Giambalvo***

43) John Giambalvo was the RFE/RL Chief Financial Officer from April, 2012, and was later promoted to Acting CEO of RFE/RL.

44) In his capacity as CFO, Giambalvo negotiated the lease agreement with L88.

45) After L88 took over, Giambalvo was elevated to the position of acting co-interim manager along with the company's Executive Editor.

46) Giambalvo resigned from RFE/RL on August 29, 2015.

***Defendnat Nenad Pejic***

47) Nenad Pejic joined RFE/RL in 1993, when he was named the first Director of RFE/RL's Balkan Service.

48) Pejic became became RFE/RL's Editor-in-Chief of Programming in December 2013.

49) Pejic served as Acting Chief Executive Officer from August 2015 to June 2016.

**BACKGROUND**

***Radio Free Europe/Radio Liberty***

50) RFE/RL is a 501(c)(3) non-profit under the direct oversight of the presidentially appointed Broadcasting Board of Governors (BBG).

51) RFE/RL is a grantee of the U.S. Government; 100% of RFE/RL funds are U.S. Government funds appropriated to it by Congress via the BBG.

52) The BBG includes line items for RFE/RL programs in its budget requests to Congress.

53) RFE/RL is designed to provide an example of free press in areas that have not traditionally had free, open media.

54) RFE/RL furthers a government purpose in that it promotes a positive example of American ideals of free press overseas.

55) BBG administers a number of other similar organizations, such as Radio Free Asia, and Voice of America.

## FACTUAL ALLEGATIONS

***L88 Becomes RFE/RL's Landlord***

56) RFE/RL Prague headquarters is a built-for-purpose broadcasting facility.

57) The facility maintains extensive security measures to protect all manners of information delivery.

58) Because of the sophisticated nature of the facility, the RFE/RL Technology Division has historically had responsibility for management and maintenance of the facility.

59) The technology division's oversight included managing the payments to – and supervising the activities of vendors responsible for – power, cooling, and other requirements that make a broadcast facility function properly.

60) In about June 2012, L88 purchased the building in which RFE/RL operates in Prague, Czech Republic.

61) L88 paid about $94 million for the building.

62) After purchasing the building, L88 became RFE/RL's landlord for RFE/RL's building in Prague.

63) The agreements between L88 and RFE/RL include the Lease Agreement, Property Management Agreement, and Cash Management Agreement.

64) Under this structure, all Operations and Management expenses were to be a dollar-to-dollar pass-through in which RFE/RL pays L88 and L88 pays those moneys to vendors.

65) When L88 initially took over as RFE/RL's landlord, it subcontracted its property management duties to Cushman-Wakefield, the same third-party RFE/RL used prior to L88's purchase of the building.

66) Paying O&M vendors was the job of Cushman-Wakefield.

67) L88 held all maintenance and utility contracts.

68) RFE/RL vetted the O&M expenses and communicated acceptance of the invoices to Cushman-Wakefield.

69) After receiving approval from RFE/RL's technology division, RFE/RL's finance department would then make payment to L88 to satisfy the invoices.

70) Donald May, Director of RFE/RL Facilities Management, Broadcast Engineering, and Technical Operations, was in charge of reviewing and reconciling L88 invoices

71) All services and payments were subject to a set of agreements between and among RFE/RL and L88. These agreements include a lease agreement, a property management agreement, and a cash management agreement.

***L88 and Giambalvo Remove RFE/RL Technology Division Oversight***

72) In or about January 2013, BBG removed RFE/RL's President Steve Korn and replaced him with Kevin Klose.

73) In or about February 2013, Klose promoted John Giambalvo, Nenad Pejic, and William Key.

74) John Giambalvo had formerly been the chief financial officer (CFO) of RFE. Korn promoted Giambalvo to the position of acting co-interim-manager.

75) Korn also promoted RFE/RL's Editor-in-Chief, Nenad Pejic to co-interim manager.

76) Korn promoted Key to Director of Corporate Security at RFE/RL

77) Shortly after taking control in March 2013, Giambalvo and Pejic set about assisting L88 in eliminating RFE/RL oversight.

78) In March 2013, L88 removed RFE/RL's Technology Division access rights to the Building Management System and vendor invoice data system.

79) This change removed RFE/RL's ability to reconcile and review invoices from L88 and Cushman-Wakefield.

80) When Carzoli inquired with Cushman-Wakefield as to why these access rights had been revoked, Cushman-Wakefield told Technology Division management that an agreement between John Giambalvo and L88 prevented Cushman-Wakefield from communicating with Technology Division management.

81) Under John Giambalvo, the RFE/RL Finance Division assumed the responsibility of reconciling invoices, signing and receiving reports, and issuing payment to L88.

82) May never saw any invoices after March 2013.

83) L88, in conjunction with Pejic and Giambalvo, brought on new contractors to service the RFE/RL Prague facility. These contractors reported directly to L88.

84) The new contractors that L88 hired included contractors for facilities management and critical services.

85) The "critical services" contractors handled management of RFE/RL's multi-million dollar studios, equipment, software, and hardware.

86) After March 2013, L88 collected millions of dollars in pass-through operating funds from RFE/RL with no oversight from the Technology Division.

87) In the course of investigating and talking with vendors, Carzoli, May, and Hanspeter learned that L88 never paid most of the property management vendors as required by L88's contract with RFE/RL.

88) Following March 2013, Carzoli, May, and Hanspeter noticed a deterioration of building appearance and operation.

89) Multiple vendors complained to Carzoli, May, and Hanspeter that they were not being paid by L88.

90) On or about January 8, 2015, May learned that L88 planned to cancel the Cushman-Wakefield property management contract.

91) L88 later terminated the contract with Cushman-Wakefield Property Management.

92) L88 formed its own facilities management company, CEEMaC, to service the RFE/RL building and took over the property management of the RFE/RL building.

93) L88 falsely told the vendors RFE/RL had not paid L88.

94) In June 2014, the building facilities management company, KART, stopped providing services to RFE/RL because L88 had not paid the company's invoices.

95) In August 2015, the cleaning services company, RPM, stopped providing services to RFE/RL because L88 had not paid the company's invoices.

96) When L88 stopped paying their own facilities management and property management personnel their salaries, those staff also left the company.

97) Carzoli learned that the building maintenance company, Rossi, terminated their contract with L88 due to nonpayment, with less than a 24-hour handover period.

98) The Czech state power company, CEZ, warned RFE/RL that CEZ would cut off the electricity if RFE did not pay the power bill that L88 was supposed to have paid.

99) Lenka Altnerova sent an email on October 9, 2015, discussing the CEZ threat to cut off the RFE/RL power supply due to non-payment.

> **From:** Lenka Altnerova [mailto:AltnerovaL@rferl.org]
> **Sent:** Friday, October 09, 2015 4:16 PM
> **To:** Scott Baker; Stephanie Schmidt; Ben Herman
> **Cc:** Jakub Hromadko; Petr Landsinger; Jiri Balcar; Jiri Skopek
> **Subject:** RE: disconnection of electricity for nonpayment - URGENT !!!!!!!!!!!!!
>
> Dear Colleagues,
>
> We obtained information from CW (Mr. Landsinger) that CEZ is now threatening to disconnect the electricity supply. Currently CEZ wants to paid late payment interests. I until October 15, 2015, CEZ is prepared to disconnect the electricity supply, even though we already promised to pay bills for the electricity supply for August and Septem had a call with Mr. Landsinger now and he promised they CW (1) will try to find though their connections someone more senior in CEZ to discuss it and (2) find out how c electricity.
>
> I copy Mr. Lansinger. If you have any questions, please feel free to ask him.
>
> With regards, Lenka

100) The company that services the building's uninterruptible power supply did not replace system batteries for which RFE/RL had paid L88 in advance.

101) Carzoli obtained internal L88 spreadsheets showing that L88 failed to pay most property and facilities management vendors.

102) For example, one spreadsheet shows the summary of outstanding payables for CEEMaC, the property management arm of L88. As of December 1, 2014, the outstanding payables totaled somewhere around $318,905.88.

| | CEEMaC Payables | | | USD/CZK exchange rate | USD 1 = 22 |
|---|---|---|---|---|---|
| | CATEGORY | INVOICED | | | OUTSTANDING |
| | CEEMaC RFE | 4,391,018.68 CZK | = in USD: | 199,591.76 $ | 4,391,018.68 CZK |
| | CEEMaC Villa CH | 528,723.68 CZK | = in USD: | 24,032.89 $ | 342,383.68 CZK |
| | CEEMaC PFF | 312,221.25 CZK | = in USD: | 14,191.88 $ | 312,221.25 CZK |
| | CEEMaC other | 2,061,055.88 CZK | = in USD: | 93,684.36 $ | 1,970,305.88 CZK |
| | CEEMaC salaries | 592,222.82 CZK | = in USD: | 26,919.22 $ | 0.00 CZK |
| | **TOTAL:** | **7,885,242.31 CZK** | **=in USD: 358,420.11 $** | | **7,015,929.49 CZK** |
| As of: | December 1, 2014 | | | | |

103) Other spreadsheets in the same workbook provide more detail as to which specific vendors L88 had not paid as of December 1, 2014.

**CEEMaC/RFE PAYABLES**

Date: December 1, 2014 — SUBTOTAL 4,391,018.68 CZK — 4,391,018.68 CZK

| Invoice No. | Supplier | Description | Invoiced total | (in USD) | Due date | Internal remark | Status | Entered / paid on | Outstanding (CZK) |
|---|---|---|---|---|---|---|---|---|---|
| 1525405 | AB Facility | fixing of the sprinkler system (replacement of a control | 10,224.50 CZK | 464.75 | 7/30/14 | 08/14-R | Vendor Form | | 10,224.50 CZK |
| 1525679 | AB Facility | Broadcast Center - service 8,9/2014 | 271,351.14 CZK | 12,334.14 | 11/7/14 | 10/14-R | Vendor Form | | 271,351.14 CZK |
| 20145453 | RPM Service | Cleaning materials 8/2014 | 72,042.00 CZK | 3,274.64 | 9/30/14 | 08/14-R | Vendor Form | | 72,042.00 CZK |
| 20145454 | RPM Service | Cleaning + Gardening - flat fee 8/2014 | 314,599.00 CZK | 14,299.95 | 9/30/14 | 08/14-R | Vendor Form | | 314,599.00 CZK |
| 2145003127 | Česká energie | Advanced payment for gasconsumption 11/2014 | 10,043.00 CZK | 456.50 | 11/10/14 | 11/14-R | Vendor Form | | 10,043.00 CZK |
| 4726983932 | ČEZ Prodej | Electricity consumption 9/2014 | 1,882,674.00 CZK | 85,576.09 | 11/7/14 | 09/14-R | Vendor Form | | 1,882,674.00 CZK |
| 62414 | SAWAX | repair of ABNER (heating cabinet) | 7,574.60 CZK | 344.30 | 10/11/14 | 09/14-R | Vendor Form | | 7,574.60 CZK |
| 344057715 | SCHRACK TECHNIK | test of batteries | 56,967.00 CZK | 2,589.41 | 10/31/14 | 10/14-R | Vendor Form | | 56,967.00 CZK |
| 344061746 | SCHRACK TECHNIK | services and replacement of batteries | 9,075.00 CZK | 412.50 | 11/19/14 | 11/14-R | Vendor Form | | 9,075.00 CZK |
| 9110584385 | Pražská teplárenská | Heat consumption 10/2014 | 645,817.44 CZK | 29,355.34 | 11/20/14 | 10/14-R | Vendor Form | | 645,817.44 CZK |
| 7736214 | Pražská teplárenská | Advanced payment for heat consumption 11/2014 | 526,600.00 CZK | 23,936.36 | 11/15/14 | | Vendor Form | | 526,600.00 CZK |
| 1401154 | METALO | supply and installation of the drive, service of gates | 30,610.00 CZK | 1,391.36 | 11/19/14 | 10/14-R | Vendor Form | | 30,610.00 CZK |
| 620241338 | Telefonica Czech Rep | Elevator emergency telephone landlines 11/2014 | 1,796.85 CZK | 81.68 | 11/21/14 | 11/14-R | Vendor Form | | 1,796.85 CZK |
| 1411031208 | Pražské služby | waste disposal 10/2014 | 18,737.00 CZK | 851.68 | 11/26/14 | 10/14-R | Vendor Form | | 18,737.00 CZK |
| 141519 | EG_LINE | door locks (Panges meeting rooms) | 14,686.98 CZK | 667.59 | 11/17/14 | 11/14-R | Vendor Form | | 14,686.98 CZK |
| 5102014 | Reich Tomas | Inspection of EPS | 220,676.17 CZK | 10,030.74 | 11/19/14 | | Vendor Form | | 220,676.17 CZK |
| 6144025853 | PVK (Veolia) | Deposit for water consumption 4Q/2014 | 292,940.00 CZK | 13,315.45 | 11/15/14 | 09/14-R | Vendor Form | | 292,940.00 CZK |
| 1141403589 | CHVALIS | reset of aggregates (units) | 4,604.00 CZK | 209.27 | 12/2/14 | | Vendor Form | | 4,604.00 CZK |

**CEEMaC/Villa CH PAYABLES**

Date: December 1, 2014 — SUBTOTAL 528,723.68 CZK — 342,383.68 CZK

| Invoice No. | Supplier | Description | Invoiced total | (in USD) | Due date | Internal remark | Status | Entered / paid on | Outstanding (CZK) |
|---|---|---|---|---|---|---|---|---|---|
| | MUDr. Novakova | villa rent December 2014 | 186,340.00 CZK | 8,470.00 | 11/30/14 | | Approved Nov 29 | Paid Dec 1 | 0.00 CZK |
| 30236742 | PRE | deposit for electricity consumption | 13,540.00 CZK | 615.45 | 11/10/14 | 11/14-M | Vendor Form | | 13,540.00 CZK |
| 621360002 | Pražská plynárenská | deposit fo gas consumption | 5,000.00 CZK | 227.27 | 11/20/14 | 11/14-M | Vendor Form | | 5,000.00 CZK |
| 14013 | EXCLUSIVE DRIVER | Limousines services 1. - 15.10.2014 | 32,498.18 CZK | 1,477.19 | 11/1/14 | 10/14-M | Vendor Form | | 32,498.18 CZK |
| 14014 | EXCLUSIVE DRIVER | Limousines services 16. - 31.10.2014 | 47,008.50 CZK | 2,136.75 | 11/18/14 | 10/14-M | Vendor Form | | 47,008.50 CZK |
| 20140024 | Lucie Kasterova | supplies reconciliation 9/2014 | 47,007.00 CZK | 2,136.68 | 10/9/14 | 08/14-M | Vendor Form | | 47,007.00 CZK |
| 20140027 | Lucie Kasterova | Advanced payment 11/2014 | 50,000.00 CZK | 2,272.73 | 11/5/14 | 11/14-M | Vendor Form | | 50,000.00 CZK |
| 20140026 | Lucie Kasterova | concierge Services - 50hr flat fee 50% discount - 10/201 | 22,250.00 CZK | 1,011.36 | 11/5/14 | 10/14-M | Vendor Form | | 22,250.00 CZK |
| 20140028 | Lucie Kasterova | supplies reconciliation 10/2014 | 18,453.00 CZK | 838.77 | 11/17/14 | 10/14-M | Vendor Form | | 18,453.00 CZK |
| 2014008 | Libor Novak | Chef Libor - cooking 10/2014 | 39,000.00 CZK | 1,772.73 | 11/18/14 | 10/14-M | Vendor Form | | 39,000.00 CZK |
| 20140011 | Jaroslav Beranek | Chef Jarda - catering 10/2014 | 39,150.00 CZK | 1,779.55 | 11/10/14 | 10/14-M | Vendor Form | | 39,150.00 CZK |
| 1400216430 | RIO Media | internet 10/2014 | 9,680.00 CZK | 440.00 | 11/24/14 | 10/14-M | Vendor Form | | 9,680.00 CZK |
| 1400203074 | RIO Media | internet 9/2014 | 9,680.00 CZK | 440.00 | 10/24/14 | 09/14-M | Vendor Form | | 9,680.00 CZK |
| 300 | Julius Meinl | Food Supplies 10/2014 | 9,117.00 CZK | 414.41 | 11/9/14 | 10/14-M | Vendor Form | | 9,117.00 CZK |

**CEEMaC/PFF PAYABLES**

Date: December 1, 2014 — SUBTOTAL 312,221.25 CZK — 312,221.25 CZK

| Invoice No. | Supplier | Description | Invoiced total | (in USD) | Due date | Internal remark | Status | Entered / paid on | Outstanding (CZK) |
|---|---|---|---|---|---|---|---|---|---|
| 1034185796 | Activa spol. | Toners for the villa | 25,992.00 CZK | 1,181.45 | 9/11/14 | 08/14-M | Vendor Form | | 25,992.00 CZK |
| 1140100187 | Aeroparner | Kiev flight - EUR 10,350 | 286,229.25 CZK | 13,010.42 | 9/10/14 | | Vendor Form | | 286,229.25 CZK |

**CEEMaC/Other PAYABLES**

Date: December 1, 2014 — SUBTOTAL 2,861,055.88 CZK — 1,970,305.88 CZK

| Invoice No. | Supplier | Description | Invoiced total | (in USD) | Due date | Internal remark | Status | Entered / paid on | Outstanding (CZK) |
|---|---|---|---|---|---|---|---|---|---|
| 1406029 | Zlatá Catering Group | Catering 4.9/2014 (Landlord's EOS Party) | 253,807.18 CZK | 11,536.69 | 9/15/14 09/14-M | | Vendor Form | | 253,807.18 CZK |
| 90046275 | ICZ | Next generation Firewall appliance, its installation | 261,785.41 CZK | 11,899.34 | 8/13/14 08/14-M | | Vendor Form | | 261,785.41 CZK |
| 90046350 | ICZ | Installation and configuration works for mailserver, Mail | 123,798.00 CZK | 5,627.18 | 8/6/14 07/14-M | | Vendor Form | | 123,798.00 CZK |
| 90045718 | ICZ | HW - install server installation Farmers | 431,188.50 CZK | 19,599.48 | 6/20/14 06/14-M | | Vendor Form | | 431,188.50 CZK |
| 3/02140897 | DATASYS | Help desk services 9/2014 | 90,750.00 CZK | 4,125.00 | 11/16/14 09/14-M | | Approved Nov 29 | Paid Dec 1 | 0.00 CZK |
| 12224214 | Dial Telecom | profi internet line fee 10/2014 | 6,050.00 CZK | 275.00 | 11/16/14 10/14-M | | Vendor Form | | 6,050.00 CZK |
| 214290 | AustroBohemia | Modier 4 IGTS license fee, development of individual mov | 122,452.00 CZK | 5,566.00 | 11/21/14 10/14-M | | Vendor Form | | 122,452.00 CZK |
| 140662 | Cushman Wakefield | Manager's fee for 3Q/2014 - property management | 104,816.30 CZK | 4,764.38 | 10/14/14 09/14-M | | Vendor Form | | 104,816.30 CZK |
| 140663 | Cushman Wakefield | Manager's fee for 3Q/2014 - financial management | 69,877.50 CZK | 3,176.25 | 10/14/14 09/14-M | | Vendor Form | | 69,877.50 CZK |
| 140664 | Cushman Wakefield | Manager's fee for 3Q/2014 - project management & mg | 498,090.53 CZK | 22,640.48 | 10/14/14 09/14-M | | Vendor Form | | 498,090.53 CZK |
| 140613 | Cushman Wakefield | valuation of the RFE property | 91,955.46 CZK | 4,179.79 | 9/30/14 09/14-M | | Vendor Form | | 91,955.46 CZK |
| 11040255 | TICK TACK | Taxi services 9/2014 | 837.01 CZK | 38.05 | 11/5/14 09/14-M | | Vendor Form | | 837.01 CZK |
| 4726983966 | ČEZ Prodej | late payment penalty (RFE) | 5,648.00 CZK | 256.73 | [illegible] 07/14-M | | Vendor Form | | 5,648.00 CZK |

104) Another L88 spreadsheet titled "Overdue_invoices.xlsx" shows as many as forty invoices that L88 never paid. The spreadsheet includes invoice numbers, vendors' names, descriptions of services, invoice totals, and due dates.

| Invoice No. | Supplier | Description | Invoiced total | Due date | Internal remark | Status | Entered / paid on |
|---|---|---|---|---|---|---|---|
| 344061746 | SCHRACK TECHNIK | services and replacement of batteries | 9,675.00 CZK | 11/19/14 | 11/14-R | Vendor Form | |
| 1442343491 | Pražské vodovody a kanalizace | water consumption 18.9.-6.12.2014 | 47,240.00 CZK | 1/6/15 | 12/14-R | Vendor Form | |
| 1411032890 | Pražské služby | waste disposal 12/2014 | 18,737.00 CZK | 1/28/15 | 12/14-R | Vendor Form | |
| 20140408 | DATSUP s.r.o. | revision of conductors | 20,449.00 CZK | 2/11/15 | 12/14-R | Vendor Form | |
| 1401025896 | Pražské služby | grease separator waste disposal 12/2014 | 3,082.00 CZK | 2/4/15 | 12/14-R | Vendor Form | |
| 150000140 | Česká energie | Advanced payment for gas consumption 2/2015 | 13,310.00 CZK | 2/10/15 | 02/15-R | Vendor Form | |
| 150100025 | HFP s.r.o. | control of work safety adn fire protection | 12,100.00 CZK | 2/14/15 | 01/15-R | Vendor Form | |
| 7280051487 | Pražská teplárenská | Heat consumption 1/2015 | 817,972.41 CZK | 2/20/15 | 01/15-R | Vendor Form | |
| 630622500 | Telefonica Czech Republic | Elevator emergency telephone landlines 1/2015 | 1,796.85 CZK | 2/26/15 | 01/15-R | Vendor Form | |
| 158100006 | Petr Kunes | sewerage cleaning + camera inspection | 9,340.00 CZK | 2/21/15 | 02/15-R | Vendor Form | |
| 15100131 | ROSSY services | facility management 1/2015 | 238,390.57 CZK | 2/26/15 | 01/15-R | Vendor Form | |
| 1511000598 | Pražské služby | waste disposal 1/2015 | 18,737.00 CZK | 3/27/15 | 01/15-R | Vendor Form | |
| 150000450 | Česká energie | Advanced payment for gas consumption 3/2015 | 10,527.00 CZK | 3/10/15 | 03/15-R | Vendor Form | |
| 7290021418 | Pražská teplárenská | Heat consumption 2/2015 | 918,962.49 CZK | 3/19/15 | 02/15-R | Vendor Form | |
| 150100084 | KA-EM | repair works | 3,686.00 CZK | 3/11/15 | 02/15-R | Vendor Form | |
| 150100094 | KA-EM | repair works | 5,453.00 CZK | 3/17/15 | 02/15-R | Vendor Form | |
| 634102736 | Telefonica Czech Republic | Elevator emergency telephone landlines 2/2015 | 1,978.35 CZK | 3/30/15 | 02/15-R | Vendor Form | |
| 4726983904 | ČEZ Prodej | Advanced payment for electricity consumption 4/2015 | 1,403,700.00 CZK | 4/15/15 | 04/15-R | Vendor Form | |
| 4726983937 | ČEZ Prodej | Electricity consumption 2/2015 | 1,861,579.00 CZK | 4/10/15 | 02/15-R | Vendor Form | |
| 1511013090 | Pražské služby | waste disposal 2/2015 | 16,923.00 CZK | 3/25/15 | 02/15-R | Vendor Form | |
| 215020 | Veselý Aleš | repair works | 2,600.00 CZK | 3/24/15 | 03/15-R | Vendor Form | |
| 2015707254 | Johnson Controls | regular services of BMS | 50,417.00 CZK | 3/19/15 | 02/15-R | Vendor Form | |
| 1542029949 | Pražské vodovody a kanalizace | water consumption 7.12.2014-12.3.2015 | 204,976.00 CZK | 3/29/15 | 03/15-R | Vendor Form | |
| 615404979 | Pražské vodovody a kanalizace | water - deposit - 2q/2015 | 195,510.00 CZK | 4/15/15 | 04/15-R | Vendor Form | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 150000775 | Česká energie | Advanced payment for gas consumption 4/2015 | 7,865.00 CZK | 4/10/15 | 04/15-A | Vendor Form | |
| 150100044 | HPP s.r.o. | control of fire dampers | 256,230.00 CZK | 3/16/15 | 02/15-R | Vendor Form | |
| 150100047 | HPP s.r.o. | control of work safety adn fire protection | 12,100.00 CZK | 3/14/15 | 02/15-R | Vendor Form | |
| 150100058 | HPP s.r.o. | control of fire closures | 23,619.00 CZK | 4/3/15 | 03/15-A | Vendor Form | |
| 15100278 | KOSST services | facility management 2/2015 | 543,625.17 CZK | 4/9/15 | 02/15-A | Vendor Form | |
| 1500903 | R.K. Servis Rudolf Kvíčala | repair works | 17,384.00 CZK | 4/13/15 | 03/15-A | Vendor Form | |
| 55000162 | NEKO KLIMA | control of air condition in RFE | 230,828.10 CZK | 4/16/15 | 03/15-R | Vendor Form | |
| 21521 | SHZ Vysoké Mýto | revision of sprinklers | 132,042.00 CZK | 4/16/15 | 03/15-R | Vendor Form | |
| 55000158 | NEKO KLIMA, s.r.o. | repair of air condition | 2,675.00 CZK | 4/15/15 | 03/15-R | Vendor Form | |
| 7270012733 | Pražská teplárenská | Heat consumption 3/2015 | 844,650.79 CZK | 4/20/15 | 03/15-R | Vendor Form | |
| 150100069 | HPP s.r.o. | control of work safety adn fire protection | 12,100.00 CZK | 3/14/15 | 03/15-R | Vendor Form | |
| 4724983905 | ČEZ Prodej | Advanced payment for electricity consumption 5/2015 | 1,460,900.00 CZK | 5/15/15 | 05/15-R | Vendor Form | |
| 4724983938 | ČEZ Prodej | Electricity consumption 3/2015 | 1,870,499.00 CZK | 5/11/15 | 03/15-R | Vendor Form | |
| 1511014498 | Pražské služby | waste disposal 3/2015 | 18,737.00 CZK | 4/29/15 | 03/15-R | Vendor Form | |
| 637986406 | Telefonica Czech Republic | Devator emergency telephone landlines 3/2015 | 1,978.35 CZK | 4/29/15 | 03/15-R | Vendor Form | |
| 7736306 | Pražská teplárenská | Advanced payment for heat consumption 4/2015 | 524,600.00 CZK | 4/15/15 | 04/15-R | Vendor Form | |

***Carzoli Instigates a BBG Investigation into L88 Activities***

105) On May 10, 2013, Carzoli sent an email to John Giambalvo in which Carzoli outlined his concerns about L88's efforts to cut RFE/RL Technology Division out of all information and communications, noting that "L88 seems to want absolutely no scrutiny of their activities. . . ."

Hi John,
Luke is off today and in Austria for a long weekend. Jiri brought up some discrepancies in invoicing this morning but I had to tell him there was nothing I could do to help, that it would eventually be on Prague Finance since L88 has stopped their cooperation with RFE/RL FM.

I'm not sure how up-to-date you are on current L88-FM events, but I will briefly summarize what is going on, it affects not just FM but broadcast operations and Prague Finance as well.

**Facilities Management update:**
It seems L88 has unilaterally cut off RFE/RL FM from the building **BMS** (Building Management System) monitoring as well as the **Google docs account** (that is the repository of invoices and documentation necessary for reconciliation of our Maint & Ops billing). L88 has also taken the large office space on the 4th floor despite having told Luke they would be taking the small office space after building it out. They have a good bit of prime, class a office space now, paid for by the US taxpayer.

Although we submitted trouble tickets stating we have lost read access (assuming they had a technical problem) to those two critical accounts, it has seemingly been ignored for a couple of weeks now.

When asked, the Property Manager said he will not/can not talk to us about it due to his instructions from L88. We can therefore discount technical problems.

Orco was required to give us monitoring only access of the BMS so we could check for trends, efficiencies, problems, etc. However, because we have not been allowed to see the current lease for the building, we have no idea if this is still contractually required.
**Status:** We are *blind* when it comes to what is happening, or has happened in the building, and do not know if the lease obligates L88 to provide us with the same BMS read only access as we had with Orco.
Please advise.

Lease contract clauses regarding the **services WE must supply** to L88. Right now they are connected to the world through us. Does the lease obligate us to do so?
Please advise.

**The Google docs account** was used for reconciliation of all invoicing.
**Status:** We can not accurately and in a timely manner track RFE/RL expenditures for FM. When invoiced quarterly it will have to go directly to Scott who will have no idea if the payments are invoiced correctly.
Please advise.

**Office space:** We assume the lease states that L88 can take whatever space they want in the building with no offsets according to the lease. We do not know.
Status: They have taken the large office, prime building space.
Please advise.

**Summary:**
The property manager made it clear that L88 hates dealing with Jiri Balcar, and we assume this must be the reason for the cut off. As you know, Todoroki has also attacked us all... FM... and also some individually in some of his emails, despite Luke having taken over the face-to-face with L88, "freeing them" of the need to communicate with Jiri. We have been bending over backwards to accommodate the 4-year-long process of working out the warranty issues, enduring disturbing/noisy works, even during peak broadcast times, etc.

L88 seems to want absolutely no scrutiny of their activities, and are accomplishing that through cutting all of FM off from the BMS and Google Docs (as well as day-to-day coordination).

RFE/RL must decide if we will allow them to continue their divide & conquer attack method. If WE want to get rid of the FM section responsible for monitoring building performance, contractor adherence to SOP (Standard Operating Procedures) for broadcast operations purposes, invoice reconciliation, etc, then we should do it now while we are hurting for funding.
Please advise.
Thanks,
Chris

106) In another email dated May 10, 2013, Scott Baker noted to Giambalvo that L88 had not been providing RFE/RL Technology Division with the information needed to reconcile invoices.

From: "Scott Baker" <BakerS@rferl.org>
To: "Christopher Carzoli" <CarzoliC@rferl.org>
Cc: "Ben Herman" <HermanB@rferl.org>, "Don May" <MayD@rferl.org>, "John Giambalvo" <GiambalvoJ@rferl.org>, "Luke Springer" <SpringerL@rferl.org>
Date: Fri, May 10, 2013 14:33
Subject: Re: L88 and FM Summary

My two cents:

In the discussion I had with John Gibson last week, he agreed to put the invoices received for utilities on Google Docs the month they arrive. In order for this to have value, we need the Faciltiies Team to verify the meter readings/usage. Gibson seemed to understand this. I cannot process the quarterly reconciliation without someone from the RFE/RL FMS team verifying the expenses. Of course, since we are required to pay a quarterly estimate in advance per the lease, there is little incentive for L88 to get us the information in a timely fashion. We need our guys to have the access to all the data, documents and the BMS or nothing will have changed.

Scott

107) In about October 2013, William Key, Director of Corporate Security at RFE/RL, resigned from RFE/RL and joined L88 as a vice president.

108) In or about March 2013, Klose resigned, and BBG named Giambalvo and Nenad Pejic as co-interim CEOs of RFE/RL.

109) In or about July 2014, L88 officers William Key and John Todoroki contacted Hanspeter in an effort to hire Hanspeter to work for L88. Hanspeter declined the offer.

***Giambalvo and Pejic Institute Staffing and Organizational Changes***

110) Beginning in or about October 2014, Giambalvo and Pejic implemented large scale organizational changes designed to minimize scrutiny of L88 activities, marginalize relators, and promote those compliant in the scheme to maximize L88 profits.

111) On or about October 1, 2014, Giambalvo and Pejic hired Sardy Bernard as a consultant for two weeks.

112) On or about October 31, 2014, Bernard produced a report that was highly critical of the Technology Division management and recommended RFE/RL create a chief technology officer (CTO) position.

113) Later, on or about July 22, 2015 Giambalvo hired Bernard for the CTO position that Bernard's report recommended be created.

114) Bernard went on to work directly with the technology supervisors on further organizational changes, cutting Carzoli out of the chain of command and leaving Carzoli with virtually no job responsibilities.

115) On or about November 24, 2014, Giambalvo hired Susan Jackson as "Director of Video and Technical Operations" without ever advertising the position.

116) Giambalvo hired Jackson to replace May, who had been critical of the effort to remove oversight of L88.

117) Giambalvo gave Jackson virtually all responsibilities formerly under Carzoli, May, and Hanspeter in the Technology Division.

118) Throughout January 2015, Giambalvo moved the Internet Team directly under his own supervision, and then moved the entire Networks Department, which had formerly been under Hanspeter's supervision, to the Internet team.

119) These unexplained organizational changes had the effect of removing most oversight responsibilities from Hanspeter, who had been critical of the lack of Technology Division oversight over L88's activities.

120) In or about February 2015, Jackson began demanding technical parameters for a TV studio project in Prague that would be given to L88.

121) Giambalvo and Pejic pushed Jackson to obtain these parameters for the TV studio project because delivery of the technical parameters would unlock $300,000 in funds for L88.

122) Bernard carried out Giambalvo's and Pejic's efforts to reorganize the Technology Division in a way that marginalized Carzoli, Hanspeter, and May.

123) On or about October 14, 2015, Bernard informed May that May had been reassigned from "Director, Technical operations" to "Acting Director of Engineering".

124) Bernard told May that the "Director of Engineering" position would be an outside hire, and that the future of May's "Acting Director of Engineering" position was uncertain.

125) In October–November of 2015, Pejic, and Bernard withheld May's salary review and anticipated raise, and changed May's title without his knowledge or any amendment to his contract.

126) During an October 2015 meeting, Bernard showed Carzoli the new Technology Division Organizational Chart that showed Carzoli as "Director of Project Management"—a new department consisting of only Carzoli and one other employee.

127) During this same October 2015 meeting between Carzoli and Bernard, Bernard mentioned that Carzoli, Hanspeter, and May are on a "kill list" from management.

128) At a November 6, 2015 meeting about the new organizational chart, Bernard explained to Hanspeter that Hanspeter would be in charge of the Telecommunications group, and that someone yet-to-be-hired would handle Hanspeter's prior duties of supervising both the Networks and Telecommunications departments.

129) On or about November 25, 2015, under threat of termination if they did not sign, Carzoli and May each signed their respective contract amendments, which constituted demotions for all practical purposes.

***Carzoli, May, and Hanspeter Report their Concerns to the Department of State OIG***

130) On or about February 16, 2015, Carzoli, Hanspeter, and May reported to the Department of State Office of Inspector General (OIG) and the Federal Bureau of Investigation (FBI) their concern that L88 was mismanaging RFE/RL's funds and compromising RFE/RL security.

131) This triggered an FBI investigation that was later handed off to the OIG.

132) Carzoli, May, and Hanspeter were in frequent contact with the OIG throughout the end of 2015 into January 2016.

133) On September 17, 2015, Carzoli, May, and Hanspeter met with OIG investigators Peter Lubeck and Stephen Alonzo.

134) On September 17, 2015, following the meeting with the Department of State OIG, Carzoli sent a long email chain regarding L88 to the Department of State OIG to discuss L88's conduct.

135) On or about September 21, 2015, Lubeck and Alonzo interviewed May.

136) On or about October 15, 2015, May exchanged emails with OIG Whistleblower Ombudsman, Jeff McDermott.

137) McDermott responded that the information May provided "does seem to meet the criteria for filing a grantee employee whistleblower complaint."

138) Following the exchange, May completed the online complaint form.

139) On or about Oct. 23, 2015, May received an OIG request for a confidentiality waiver from Brandon J. Bruce, which May signed.

140) On or about Oct. 27, 2015, the OIG forwarded May's complaint to the BBG Executive Office.

141) On or about December 8, 2015 Carzoli emailed organizational charts to OIG showing changes in Carzoli's responsibilities over time.

142) On or about December 17, 2015 Robert Cristiano met with OIG.

143) On or about Jan. 6, 2016, Carzoli sent more information to OIG explaining key personnel at L88 and their ties to RFE/RL.

144) The FBI/OIG investigation into L88's conduct continues to this day.

***Todoroki Claims U.S. Government Affiliation to Intimidate Unpaid Vendors***

145) When vendors complained about L88's failure to pay invoices for services related to RFE/RL, Todoroki claimed affiliation with the United States Government and the Republican Party in order to intimidate vendors.

146) Other members of L88 management engaged in similar intimidation tactics.

147) L88's false claims of affiliation with the U.S. Government and the Republican Party occurred often enough to prompt Westin Stacey, executive director of the American Chamber of Commerce in the Czech Republic, to send an email discussing the conduct and clarifying that L88 has no special relationship with the U.S. Government.

**From:** Weston Stacey <WStacey@amcham.cz>
**Sent:** Wednesday, June 10, 2015 5:16 PM
**To:** Weston Stacey
**Subject:** AmCham comments on legal status of L88

Over the past few years, we have received numerous complaints from members and non-members about the non-payment of invoices by L88 and its principal representative John Todoroki. Some of these complaints are now a matter for court decision; one complaint has been reported settled.

Normally, we view such disputes as matters for the court. However, many of the complainants have reported that Mr. Todoroki made assertions of political connections with the US government or with one of the main political parties. Since L88 owns and operates the property in which Radio Free Europe resides, such alleged remarks may have received greater credibility than they deserved. In order to dispel such rumors, we contacted the US Embassy, RFE, and officials within that political party to confirm what we already knew: there is no special treatment. In particular, we would like to note that the relationship between L88 and RFE is that of landlord and tenant, and nothing more.

For the sake of clarity, we would like to emphasize that we are not judging, and cannot judge, the merits of the legal disputes between various companies and L88 or the veracity of the claims that L88 asserted special treatment in negotiations with claimants. We merely wish to dispel any rumors that the US government or RFE grants special treatment based on political affiliation of individuals or companies.

Weston Stacey | Executive Director
American Chamber of Commerce in the Czech Republic

***Embattled Leadership Resignations***

148) On or about August 29, 2015 Giambalvo resigned from RFE/RL.

149) On or about August 31, 2015 BBG appointed Pejic as RFE/RL Vice President and had Pejic continue as interim CEO of RFE.

150) On or about Jan 3, 2016, Cristiano resigned from L88.

151) Around the same time as his resignation, Cristiano sent an email to everyone at RFE/RL and L88 explaining his reasons for resigning.

152) In Cristiano's January 3, 2016 email, he admits tL88 misused certain funds.

153) Also in Cristiano's January 3, 2016 email, he asserts that he was unaware of various illegal actions taken by Todoroki.

154) In Cristiano's January 3, 2016 email, he also alludes to L88's lobbying on matters related to BBG overseas operations, writing, "We were operating under the assumption that the disagreement was a pissing contest between leaders of the BBG and Mr. Todoroki for his support of the Reform Act on Capital [sic] Hill."

**From:** Robert Cristiano <drbob@macs.com>
**Sent:** Sunday, January 3, 2016 2:52 PM
**To:** Ben Herman; Colette Dafoe
**Cc:** Bob Wilcox 2; Dr Bob 1
**Subject:** My resignation from L88

January 3, 2016

Dear Mr. Herman,

On December 17th, I voluntarily met with Special Agent Lubeck and Special Agent in Charge Alonzo at their offices in Virginia. They revealed to me information about John Todoroki, and actions taken by him, that I was unaware of. Frankly, I was appalled. What I learned from the two agents was alien to how I have conducted my business career spanning 40 years. On Monday, December 28th, I delivered my resignation to Mr. Todoroki from all L88 entities in which I was either a Director or Manager. Mr. Wilcox has also delivered his resignation.

I felt the need to reach out to you since so many communications had been directed to me from Nixon Peabody. As you probably assumed, I was instructed to direct any and all communications from Nixon Peabody to Mr. Todoroki, and he determined all responses including the two responses sent by me to you.

Initially, his choice to control all communications with RFE was not alarming since Mr. Todoroki conducted 100% of the lease negotiations in 2012 and was in charge of all contact with RFE since then. With all of the L88 joint activity with RFE though 2014 and early 2015, we had no reason to believe there were any other than normal Landlord Tenant issues.

We only learned of the withholding of VAT payments to the VAT authority earlier this year when the VAT authority seized several bank accounts in Prague. Mr. Todoroki had opened new bank accounts, without our knowledge, and it created immense confusion for the bookkeeping staff. When confronted, he explained that the prior owner, ORCO, had not paid the VAT at closing and the VAT authority was attempting to collect it from us. He said he had to open new accounts to operate CEEMAC.

I was never informed of any battery negotiations or payments by RFE. I never saw an invoice to RFE, nor knew funds had been received. To this date, I do not know what account received the funds. I was unaware that any batteries had been purchased until requested to make an emergency payment, from my own personal funds, to cover a partial payment for batteries purchased for the building. The advance was for $27,500, representing 50% of the purchase price. When we advanced those funds, we did so under the illusion that RFE had withheld any payments to L88 pending a reconciliation and we needed to make this payment until RFE made their payments on a long list of outstanding invoices. When Agent Lubeck informed me that that RFE had paid $600,000 for batteries, I was stunned.

After a grueling and revealing five hour meeting with the two agents on December 17th, I immediately briefed my partner, Robert Wilcox. Mr. Wilcox and I have been business partners for the last 25 years. He informed me he had no knowledge of any misuse of RFE funds and was equally stunned by the gravity of the charges.

Mr. Wilcox and I represent a minority 28% Member interest in the ownership entity. I explained to the agents Mr. Todoroki, through various trusts, owns 72%. At no time did we have managerial control of the building, property management, or the entity even though we were originally listed in the notice provision of the lease. All property management decisions, reporting, banking and bookkeeping was conducted in Prague by the Prague staff reporting to and controlled by Mr. Todoroki, and property manager, Amy Leonard.

Mr. Wilcox and I now understand the gravity of the situation and why RFE initiated the actions it has with NixonPeabody. This is why we both tendered our resignations from all L88 entities. We were operating under the assumption that the disagreement was a pissing contest between leaders of the BBG and Mr. Todoroki for his support of the Reform Act on Capital Hill.

We do have concerns about the building, the financial records and ownership. All of the L88 and CEEMAC staff has left or is leaving for non-payment of salaries. There are very important records in DC and Prague that need to be preserved. Tax returns will need to be prepared by someone. ORCO has challenged the ownership of the building. And a long-term lease between Landlord and Tenant still exists. Mr. Wilcox and I have discussed the dilemma and offer our full cooperation to RFE with whatever records, knowledge, and experience we can provide to minimize the disruption to RFE caused by the actions above. If you wish to speak to me, my cell phone number is 949-278-0102.

## COUNT I

***Violations of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(A)***

155) Relators reassert and incorporate by reference all paragraphs set forth above as if restated therein.

156) Defendants L88, Robert Cristiano, and John Todoroki violated the federal False Claim Act by knowingly presenting false or fraudulent claims for payment or approval to RFE/RL.

157) Specifically, these Defendants, acting with knowledge:

a) Took funds from a U.S. Government grantee intended for furtherance of a government purpose and failed to provide the contracted services in exchange;

b) Collected payments from a U.S. Government grantee intended for pass-through to property management and facilities management vendors, but did not pay the vendors.

158) L88 passing funds through to property management and service vendors was an express condition of RFE/RL's payments to L88.

159) Actually receiving the property management services for which it paid L88 was an express condition of RFE/RL's payments to L88.

160) The federal government has been damaged as a result of these Defendants' conduct because the federal government granted millions of dollars to RFE/RL for the furtherance of a government interest that was impeded by L88's failure to comply with the express conditions of payment.

## COUNT II

*Violation of the Federal False Claims Act, 31 U.S.C. § 3729(a)(1)(C)*

161) Relators reassert and incorporate by reference all paragraphs set forth above as if restated therein.

162) Defendants John Giambalvo and Nenad Pejic conspired with L88, Robert Cristiano, and John Todoroki to present false or fraudulent claims for payment or approval to RFE/RL.

163) Specifically, John Giambalvo and Nenad Pejic worked with L88, Robert Cristiano, and John Todoroki, and with knowledge:

a) Gave moneys to L88 knowing that L88 would not spend those moneys on the contractually mandated services and vendors for which the moneys was provided;

b) Approved invoices from L88 to RFE/RL knowing that the funds had not been used, or would not be used, on the invoiced services;

c) Reorganized RFE/RL to eliminate Technology Division oversight of moneys going to L88; and

d) Staffed RFE/RL management positions with employees willing to either ignore or participate in the fraud.

164) L88 passing funds through to property management and service vendors was an express condition of RFE's payments to L88.

165) Actually receiving property management services for which it paid L88 was an express condition of RFE's payments to L88.

166) The federal government has been damaged as a result of these Defendants' conduct because the federal government granted millions of dollars to RFE/RL for the furtherance of a government interest that was impeded by L88's failure to comply with the express conditions of payment.

**PRAYER FOR RELIEF**

167) Wherefore, the Relators Christopher Carzoli and Manfred Hanspeter acting on behalf of and in the name of the United States of America, and on his own behalf, prays that judgment be entered against Defendants for violations of the federal False Claims Act as follows:

a) In favor of the United States against Defendants for treble damages to the federal government and the maximum civil penalties for each violation of the federal False Claims Act;

b) In favor of the Relators for the maximum amount pursuant to 31 U.S.C. §§ 3730(d), as well as reasonable expenses, attorney fees, and costs incurred by the Relators and their counsel;

c) For all costs of the False Claims Act civil action; and

d) In favor of the Relators and the United States for further relief as this court deems just and equitable

**DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and pursuant to the local rules of this Court, the Relators demand a jury trial as to all issues so triable.

Respectfully submitted,
THE EMPLOYMENT LAW GROUP, P.C.

By: ______________________

David L. Scher, Esq.
R. Scott Oswald, Esq.
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2802
(202) 261-2835 (facsimile)
dscher@employmentlawgroup.com
soswald@employmentlawgroup.com

______________________

Gary M. Gilbert, Esq.
The Law Office of Gary M. Gilbert & Associates
1100 Wayne Ave., Suite 900
Silver Spring, MD 20910
(301) 608-0880
(301) 608-0881 (facsimile)
gary@ggilbertlaw.com

*Counsel for the Relators*

Dated: 9/15/2016